# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEONEL & NOEL CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08 C 5556 |
| | ) |
| CERVECERIA CENTRO AMERICANA, | ) |
| S.A., CENTRAL BEER IMPORT & EXPORT | ) |
| INC., G. K. SKAGGS, INC., and | ) |
| GREGORY SKAGGS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Leonel & Noel Corp. (Tikal) has sued Cerverceria Centro Americana, S.A. (CCA), Central Beer Import & Export, Inc. (Central Beer), and G. K. Skaggs, Inc. (GKS) for breach of contract and violations of the Illinois Beer Industry Fair Dealing Act, 815 ILCS 720/1 *et seq.* (BIFDA). Tikal has also sued GKS and its president, Gregory Skaggs, asserting various other claims. GKS and Skaggs have moved for judgment on the pleadings. Central Beer has moved to dismiss.[1] For the reasons set forth below, the Court denies Central Beer's motion to dismiss. The Court dismisses count seven of Tikal's complaint but otherwise denies the GKS's and Skaggs' motions for judgment on the pleadings.

---

[1]CCA, a Guatemalan company, has not yet been served with summons.

**Factual Background**

When considering a motion to dismiss or a motion for judgment on the pleadings, the Court accepts as true the complaint's factual allegations and draws reasonable inferences in favor of the plaintiff. *See, e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 617 (7th Cir. 2007); *Guise v. BMW Mortgage, LLC*, 377 F. 795, 798 (7th Cir. 2004). The Court treats exhibits to a complaint as part of the complaint. Fed. R. Civ. P. 10(c). The Court is not bound by the parties' characterizations of the exhibits attached to the complaint and can independently examine those exhibits for inconsistencies between them and the parties' allegations. *See, e.g.*, *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

Tikal is an Illinois corporation engaged in the business of importing and distributing food and liquor. Tikal is licensed to distribute beer in Illinois and several other states. CCA produces beer in Guatemala, some of which is sold in the United States. Around 1990, Tikal began to distribute and sell CCA's beers in several states. Rather than purchasing beer directly from CCA, Tikal would acquire CCA's products through an intermediary, Central Beer. Tikal contends that CCA asserts complete control over Central Beer's activities.

CCA and Central Beer confirmed Tikal's status as a distributor of five of CCA's beers in several states in a series of letters that were not signed by Tikal. *See* Compl. Ex. 1-3. Other than those letters, Tikal has not attached to its complaint any other contract for the period before 2003.

The relationship between Tikal and CCA/Central Beer proceeded smoothly until 2003. In late 2003, CCA and/or Central Beer entered into a "master license agreement" with GKS. Compl. ¶ 32. From that point forward, Tikal was required to purchase CCA's beers from GKS rather than from CCA or Central Beer. GKS thus became a "middleman," according to Tikal. Tikal agreed to this change in writing. *See* Compl. Ex. 5. Under the new arrangement that began in late 2003, Tikal's Illinois territory was treated differently from other states. In a letter agreement signed by both Tikal and Central Beer, Tikal was named the "exclusive Distributor" for five of CCA's beers in the "states of Ohio, Minnesota, North and South Dakota, Wisconsin and Nebraska." *Id.* The agreement also provided "Ordering and Payment: Orders are to be placed to G.K. Skaggs Inc. via fax or mail. Payment policies are those provided by G.K. Skaggs." *Id.* The letter was sent to Tikal's office in Chicago, Illinois.

Tikal signed a separate letter agreement with GKS regarding the Illinois territory. In that letter GKS appointed Tikal as its "distributor for the Guatemalan Beer brands within the state of Illinois." Compl. Ex. 4 at 1. The agreement required Tikal to place its orders with GKS. Though Central Beer was not a party to the letter agreement between Tikal and GKS, the bottom of the letter indicates that a copy of the letter was sent to Central Beer.

Tikal contends that GKS exploited its position for its own benefit and to Tikal's harm. That alleged conduct included artificially raising prices on CCA beer, marketing beer in at least one state, Wisconsin, in which Tikal had exclusive distribution rights, imposing unattainable sales quotas, refusing to sell two of CCA's products to Tikal, and lying to Tikal about whether CCA was still brewing certain beers. Tikal contends that

GKS took these actions as part of a plan to take over the markets for CCA's beers that Tikal had expended money and years of effort to develop.

Effective December 31, 2006, CCA and/or Central Beer terminated Tikal as a distributor "in the states of Ohio, Minnesota, North Dakota, South Dakota, Wisconsin and Nebraska." Compl. ¶ 53. Tikal contends that this was done in bad faith and without good cause. On January 15, 2007, GKS terminated Tikal's distribution rights in Illinois, providing thirty-days notice. Similarly, Tikal contends there was no good faith basis for GKS to do so.

## Discussion

The Seventh Circuit has emphasized that even after the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), federal courts continue to adhere to a notice-pleading standard. *E.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083-83 (7th Cir. 2008). "A plaintiff must still provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests . . . ." *Id.* at 1083 (quotation omitted). A court may grant judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) only if the moving party demonstrates that based on the pleadings, there are no material issues of fact to be resolved and it is entitled to judgment as a matter of law. *E.g.*, *Bannon v. Univ. of Chicago*, 503 F.3d 623, 628 (7th Cir. 2007).

**1.  Central Beer's motion to dismiss**

   **a.  Illinois Beer Industry Fair Dealing Act**

BIFDA provides that no "brewer" may terminate an agreement with a "beer

wholesaler" unless the brewer has good cause to do so and has made a good faith effort to resolve any problems. 815 ILCS 720/4. The act defines "brewer" to include those that manufacture beer, like CCA, and master distributors that sell beer to other wholesalers on a regular basis. *Id.* 720/1.1(4)-(5). Central Beer is a "brewer" for purposes of BIFDA. BIFDA defines "wholesaler" or "beer wholesaler" as "any person . . . who is engaged in this State in purchasing storing, possessing or warehousing any alcoholic liquors for resale or reselling at wholesale, whether within or without this State." *Id.* 720/1.1(3).

Central Beer contends that count one fails as a matter of law because its contract with Tikal concerns distribution of CCA products only in states outside of Illinois, and BIFDA does not apply to activities outside of Illinois. BIFDA's definition of "beer wholesaler" requires an entity to conduct activities in Illinois, even if the beer is ultimately resold outside of the state. *Id.* This is consistent with the Seventh Circuit's construction of state trade regulation statutes. *See Morley-Murphy Co. v. Zenith Elec. Corp.*, 142 F.3d 373, 378-81 (7th Cir. 1998). Applying statutes like BIFDA to conduct occurring outside of Illinois "would, at the very least, raise significant questions under the Commerce Clause" of the U.S. Constitution. *Id.* at 379 (refusing to allow a franchisee suing under a Wisconsin statute to recover damages for lost profits due to the loss of sales in other states following dealership termination). Though neither the Seventh Circuit nor the Illinois Supreme Court has addressed the territorial reach of BIFDA, the Seventh Circuit has presumed that state courts will construe their trade and business statutes so as not to violate the Commerce Clause. *Id.*; *see also Stawski Distrib. Co. v.*

5

*Zywiec Breweries PLC*, No. 02 C 8708, 2003 WL 22290412, at *3 (N.D. Ill. Oct. 6, 2003) (concluding that BIFDA "should not be construed as governing the parties' relationship outside of Illinois"); *H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.*, No. 99 C 5437, 2002 WL 31018302, at *3-4 (N.D. Ill. Sept. 9, 2002) (explaining that even though franchisee did not "maintain physical dealerships outside of Illinois, allowing recovery under [Illinois Franchise Disclosure Act] for activities [occurring outside of Illinois] would pose a constitutional issue").

The Court cannot say, at the pleading stage, that Tikal cannot support its BIFDA claim against Central Beer. Though the parties' agreement concerns, at least in part, distribution of beer outside of Illinois, Tikal has alleged that, pursuant to its contracts with Central Beer, it conducted purchasing, storage, and warehousing activities within Illinois. This is sufficient to state a claim under BIFDA. As in the cases cited above, Tikal arguably might not be able to collect damages for lost sales outside of Illinois under BIFDA. But that is a matter for another day.

### b. Breach of contract

Tikal and Central Beer both appear to assume, without any analysis, that Illinois law governs their contract. Accordingly, the Court will apply Illinois law for purposes of Central Beer's motion. Tikal supports its breach of contract claim, in part, with Central Beer's alleged violations of BIFDA. BIFDA expressly incorporates its requirements into all agreements "between brewers and wholesalers." 815 ILCS 720/2(B). Based on Central Beer's alleged violations of BIFDA, Tikal has stated a claim against Central Beer for breach of contract.

Tikal also contends that Central Beer violated the duty of good faith and fair

dealing that Illinois law implies as part of every contract by terminating the parties' agreement.  Central Beer correctly notes, however, that contracts of indefinite duration are terminable at will by either party.  *E.g.*, *Mid-West Energy Consultants v. Covenant Home, Inc.*, 352 Ill. App. 3d 160, 163-64, 815 N.E.2d 911, 915 (2004).  The agreement between Central Beer and Tikal did not specify a duration.  "'[T]he duty of good faith and fair dealing does not override the clear right to terminate at will, since no obligation can be implied which would be inconsistent with and destructive of the unfettered right to terminate at will.'"  *Id.* (quoting *Jepersen v. Minn. Mining & Mfg. Co.*, 288 Ill. App. 3d 889, 895, 681 N.E.2d 67, 71 (1997)).  Because their agreement was of indefinite duration, Tikal cannot maintain a breach of contract claim against Central Beer based on the general principle that every contract contains a requirement of good faith and fair dealing under Illinois law.  That fact, however, does not prevent Tikal from maintaining a breach of contract based on Central Beer's alleged breach of its good faith obligations that BIFDA made part of the parties' contract.

**2.      GKS and Skaggs' motions for judgment on the pleadings**

In counts two and four of the complaint, Tikal contends that GKS breached the parties' contract and violated Tikal's BIFDA rights.  GKS contends that it is entitled to judgment on the pleadings with respect to these claims because the facts contained in its answer and affirmative defenses completely undermine Tikal's claims.  The Court disagrees with GKS.  Counts two and four state viable claims.  In its answer, GKS has denied the allegations of the complaint and provided some evidence that contradicts Tikal's allegations.  These contentions by GKS merely illustrate the nature of the parties'

7

disagreement. They do not, however, establish that Tikal cannot prove its claims against GKS.

Similarly, count five states a claim against GKS for allegedly violating the Lanham Act. As with counts two and four, GKS attacks this claim by raising affirmative matters, including factual disputes and the statute of limitations, that cannot be resolved on a Rule 12(c) motion. *E.g.*, *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (plaintiffs are not required to plead around defenses, and affirmative defenses such as the statute of limitations are not the basis for a Rule 12 motion unless the factual support for them appears on the face of the plaintiff's complaint). GKS's attack on count eight, tortious interference, suffers from the same defect.

GKS also contends that Tikal's unjust enrichment claim (count six) is inappropriate because Tikal has alleged the existence of an express contract. Until the Court determines that the parties entered into a valid contract, however, Tikal may plead breach of contract and unjust enrichment in the alternative. *E.g.*, *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003).

Finally, GKS challenges count seven, Tikal's claim under the Illinois Consumer Fraud Act. Though the title of the act contains the word "fraud," Tikal's ICFA claim is not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin.*, 536 F.3d 663, 669-70 (7th Cir. 2008).

ICFA defines a "consumer" as "any person who purchases . . . merchandise not for resale in the ordinary course of his trade or business . . . ." 815 ILCS 505/1(e). Tikal

is not a "consumer" for ICFA purposes because it resold the beer it purchased from GKS. A plaintiff that is not a consumer can only maintain an ICFA claim by sufficiently alleging a "consumer nexus." *Athey Prods. Corp. v. Harris Bank Roselle,* 89 F.3d 430, 436-37 (7th Cir. 1996). A consumer nexus "involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Id.* at 437. Tikal has not sufficiently alleged a consumer nexus in support of its ICFA claim. The alleged deceptive trade practices were not "directed to the market generally." Rather, the allegedly false statements by GKS and Skaggs regarding the availability of certain CCA products were made to Tikal, not to the general public. Nor has Tikal alleged how these statements could implicate consumer protection concerns.

## Conclusion

For the reasons stated above, the Court denies Central Beer's motion to dismiss [# 23]. The Court denies Skaggs' motion for judgment on the pleadings [#20] but dismisses the claim in count seven of the complaint against Skaggs with leave to amend. Likewise, the Court dismisses count seven of the complaint with regard to GKS with leave to amend but otherwise denies GKS's motion for judgment on the pleadings [#21]. Defendants shall respond to the current complaint, or amended complaint if the plaintiff files one, on or before May 5, 2009. Plaintiff may file an amended count seven on or before April 28, 2009. At the status hearing set for April 14, 2009, the Court will set a discovery schedule.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 13, 2009