IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONEL & NOEL CORP., | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Case No. 08 C 5556 |
| CERVECERIA CENTRO AMERICANA, S.A., CENTRAL BEER IMPORT & EXPORT, INC., GK SKAGGS, INC., and GREGORY SKAGGS, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Leonel & Noel Corp. (Tikal) has sued Cerverceria Centro Americana, S.A. (CCA), Central Beer Import & Export, Inc. (Central Beer), G.K. Skaggs, Inc. (GKS), and GKS president Gregory Skaggs for breach of contract, unjust enrichment, tortious interference with contract and business expectancy, and violations of the Illinois Beer Industry Fair Dealing Act, 815 ILCS 720/1 *et seq.* (BIFDA), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 (ICFA), and section 43(a) of the Lanham Act, 11 U.S.C. § 1125(a).

The defendants other than CCA[1] have moved for summary judgment. Each side has also moved to strike various paragraphs in the opposing side's Local Rule 56.1 statement. For the reasons below, the Court grants in part and denies in part the

---

[1] To date, Tikal has been unable to serve CCA (a Guatemalan corporation) with summons.

motion for summary judgment and denies the motions to strike.

**Factual Background**

The Court takes the following facts from the allegations in Tikal's second amended complaint and from the parties' submissions on the summary judgment motion.

Tikal is an Illinois corporation engaged in the business of importing and distributing food and liquor. Tikal is licensed to distribute beer in Illinois and several other states. CCA produces beer in Guatemala, some of which is sold in the United States. Around 1990, Tikal began to distribute and sell CCA beers in several states. Rather than purchasing beer directly from CCA, Tikal acquired CCA's products through an intermediary, Central Beer. Tikal contends that CCA asserts complete control over Central Beer's activities.

The relationship between Tikal and CCA/Central Beer proceeded smoothly until 2003. In late summer 2003, CCA and/or Central Beer entered into a "master license agreement" with GKS. 2d Am. Compl. ¶ 32. GKS informed Tikal of the agreement in October 2003 and stated that, as a result, "El Tikal Imports will begin working directly with G.K. Skaggs for . . . product ordering." Letter from Gregory Skaggs, President of GKS, to Leonel Mendia, President of Tikal (October 23, 2003). Subsequently, GKS and Central Beer allegedly requested that Tikal accept inferior terms, including reduced territories. Tikal agreed with the terms requested by GKS and Central Beer in January 2004 but claims to have done so because GKS withheld an October 2003 order until Tikal acquiesced. From that point forward, Tikal was required to purchase CCA's beers from GKS rather than from CCA or Central Beer. GKS thus became a "middleman,"

2

according to Tikal.

In a letter agreement signed by Tikal and Central Beer, Tikal was named the "exclusive Distributor" for five of CCA's beers in the "states of Ohio, Minnesota, North and South Dakota, Wisconsin and Nebraska." *See* 2d Am. Compl., Ex. 5. The agreement also provided: "Ordering and Payment: Orders are to be placed to G.K. Skaggs Inc. via fax or mail. Payment policies are those provided by G.K. Skaggs." *Id.* The letter was sent to Tikal's office in Chicago, Illinois.

Tikal signed a separate letter agreement with GKS appointing Tikal as GKS's "distributor for the Guatemalan Beer brands within the state of Illinois." 2d Am. Compl., Ex. 4 at 1. The agreement assigned Tikal an "exclusive territory . . . within the state of Illinois" consisting of twelve counties and required that Tikal place its orders with GKS. *Id.* Though Central Beer was not a party to the letter agreement between Tikal and GKS, the bottom of the letter indicates that a copy of the letter was sent to Central Beer.

Tikal alleges that CCA, Central Beer, and GKS immediately began planning to terminate Tikal in bad faith. *See, e.g.*, Nov. 25, 2003 e-mail from Cory Strauder to Juan Pedro Morales (attaching draft termination letter to be sent to Tikal "at the time we are ready to appoint a new distributor in the Illinois market"); Dec. 12, 2005 e-mail from Gregory Skaggs to Chris Garoutte and Juan Pedro Morales (stating that "[a] territorial reduction, price increase (announced last summer), increased volumes (along with your marketing plan idea) along with the freshness issue should create sufficient cause" to terminate Tikal).

Tikal contends that GKS exploited its position for its own benefit and to Tikal's

3

harm. That alleged conduct included artificially raising prices on CCA beer, marketing beer in at least one state, Wisconsin, in which Tikal had exclusive distribution rights, imposing unattainable sales quotas, refusing to sell two of CCA's products to Tikal, and lying to Tikal about whether CCA was still brewing certain beers. Tikal contends that GKS took these actions as part of a plan to take over the markets for CCA's beers that Tikal had expended money and years of effort to develop.

Effective December 31, 2006, CCA and/or Central Beer terminated Tikal as a distributor "in the states of Ohio, Minnesota, North Dakota, South Dakota, Wisconsin and Nebraska." 2d Am. Compl. ¶ 53. Tikal contends that this was done in bad faith and without good cause. On January 15, 2007, GKS terminated Tikal's distribution rights in Illinois, providing thirty days' notice. Tikal contends there was no good faith basis for GKS to do so. Tikal filed suit against CCA, Central Beer, GKS, and Gregory Skaggs on September 29, 2008.

## Discussion

**A.    Summary Judgment Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the Court draws all reasonable inferences in favor of the non-moving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial."

4

*Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

All parties appear to assume that Illinois law governs Tikal's claims. Accordingly, the Court will apply Illinois law for purposes of the defendants' motion. *See Interim Health Care of N. Illinois v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000).

**B.  Breach of Contract and BIFDA Claims (Counts One Through Four)**

To prevail on a breach of contract claim under Illinois law, Tikal must prove: "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (quoting *Hickox v. Bell*, 195 Ill. App. 3d 976, 992, 552 N.E.2d 1133, 1143 (1990)). BIFDA expressly incorporates its requirements into all agreements "between brewers and wholesalers." 815 ILCS 720/2(B).[2]

BIFDA, in turn, sets forth various prohibitions. Section 3 provides that "no brewer . . . may cancel, fail to renew, or otherwise terminate an agreement unless the brewer . . . furnishes prior notification to the affected party" in accordance with section 3. 815 ILCS 720/3. Section 4 provides that "no brewer . . . may cancel, fail to renew or

---

[2] The parties do not dispute that CCA, Central Beer, and GKS are "brewers" and Tikal is a "wholesaler." BIFDA defines "brewer" to include entities that manufacture beer and master distributors that sell beer to other wholesalers on a regular basis. *Id.* 720/1.1(4)-(5). It defines "wholesaler" to include entities "engaged in this State in purchasing, storing, possessing or warehousing any alcoholic liquors for resale or reselling at wholesale, whether within or without this State." *Id.* 720/1.1(3).

5

otherwise terminate an agreement unless the [brewer] has good cause for the cancellation, failure to renew or termination" and "has made good faith efforts to resolve disagreements." *Id.* 720/4. Section 5 provides that a brewer may not, among other things, "[r]equire a wholesaler to assent to any unreasonable requirement, condition, understanding or term," *id.* 720/5(2), or "induce or coerce . . . any wholesaler to assent to any agreement, amendment, renewal, or replacement agreement that does not comply with this Act," *id.* 720/5(9).

BIFDA defines "good cause" as existing "if the wholesaler or affected party has failed to comply with essential and reasonable requirements imposed upon the wholesaler or affected party by the agreement" and those requirements are not "discriminating either by their terms or in the methods of enforcement as compared with requirements imposed on other similarly situated wholesalers by the brewer." *Id.* 720/1.1(9). "'Good faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade as defined and interpreted under Section 2-103 of the Uniform Commercial Code." *Id.* 720/1.1(10).

The moving defendants seek summary judgment on Tikal's contract and BIFDA claims on seven grounds: (1) Tikal has failed to demonstrate a genuine issue of material fact regarding whether the defendants violated BIFDA or breached any contracts with Tikal; (2) Tikal itself materially breached the contracts by abandoning the sale of CCA beers; (3) Tikal has presented no evidence of written contract terms precluding price increases or the insertion of GKS as a "middleman"; (4) any contracts with Tikal were terminable at will; (5) Tikal's claims impermissibly rely on activities outside of Illinois; (6) Tikal's failure to purchase CCA beer after June 2005 constituted a

fatal failure to mitigate damages; and (7) Tikal's argument that it signed the 2004 agreements under economic duress defeats its breach of contract claim.

The Court begins with the defendants' argument that no genuine issue of material fact exists regarding whether they violated BIFDA and breached any contracts with Tikal. Tikal submits evidence that its relationship with CCA and Central Beer proceeded smoothly for more than a decade until 2003. Tikal also submits evidence that, beginning in 2003, the defendants imposed GKS as a "middleman"; forced Tikal to accept inferior terms; schemed to terminate Tikal in bad faith; and achieved that outcome by lying about the unavailability of two of CCA's beers and by imposing quotas and price increases. Based on the evidence presented by Tikal, a reasonable jury could infer that the defendants violated BIFDA and breached contracts with Tikal.

Second, the defendants argue that Tikal itself materially breached any contracts with Central Beer and GKS by ceasing to purchase CCA brands in June 2005 and distribute CCA brands in May 2006. The Court declines to grant summary judgment on this basis, for two reasons. First, "the determination of 'materiality' is a complicated question of fact" that is "especially unsuited to resolution by summary judgment." *Sahadi v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 706 F.2d 193, 196-97 (7th Cir. 1983) (citations omitted); *see also Chapman v. VLM Entertainment Group, Inc.*, No. 00 C 7791, 2002 WL 1610970, at *4 (N.D. Ill. July 22, 2002). The Court cannot determine as a matter of law that Tikal materially breached its contracts with the defendants. Second, a fact question remains regarding whether Tikal's non-performance was excused by the defendants' conduct. *See In re Edgewater Med. Ctr.*, 373 B.R. 845, 858 (Bankr. N.D. Ill. 2007) (explaining that under Illinois law,

7

"[n]onperformance of one party is excused when that performance is prevented by the actions of the other party.").

Next, the defendants argue that Tikal presented no evidence of a written contract term precluding price increases or the insertion of GKS as a master distributor. No such evidence is required. BIFDA defines an "agreement" broadly to encompass:

> any contract, agreement, arrangement, operating standards, or amendments to contract, agreement, arrangement, or operating standards, the effect of which is to substantially change or modify the existing contract, agreement, arrangement, or operating standards, whether expressed or implied, whether oral or written, for a definite or indefinite period between a brewer and a wholesaler pursuant to which the wholesaler has been granted the right to purchase, resell, and distribute as wholesaler master distributor any brand or brand beer offered by a brewer.

815 ILCS 720/1.1(2). Additionally, section 5 of BIFDA prohibits brewers from imposing any "unreasonable requirement, condition, understanding or term" on a wholesaler. Accordingly, the defendants' argument fails.

Fourth, the defendants argue that they are entitled to summary judgment because any contracts with Tikal were terminable at will. The Court addressed this argument in a previous decision in this case. *See Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.*, No. 08 C 5556, 2009 WL 981384, at *3 (N.D. Ill. Apr. 13, 2009). The Court determined that Tikal could not maintain a breach of contract claim based on a general principle of Illinois law that reads into every contract a duty of good faith and fair dealing. *Id.* The Court noted, however, that Tikal could maintain a breach of contract action based on the good faith obligations imposed by BIFDA. *Id.*

Fifth, Central Beer contends that Tikal's BIFDA and breach of contract claims fail to the extent they purport to rely on activities outside Illinois. The Court addressed this

argument in the same previous decision just cited. *See Leonel & Noel Corp.*, 2009 WL 981384, at *3. The Court held that Tikal stated a claim against Central Beer because it "alleged that, pursuant to its contracts with Central Beer, it conducted purchasing, storage, and warehousing activities within Illinois." *Id.* Tikal has presented sufficient evidence of such activities to survive summary judgment.

Sixth, the defendants argue that Tikal's failure to purchase CCA beer after June 2005 constituted a fatal failure to mitigate damages. This argument misunderstands Illinois law. As the court explained in *Ner Tamid Congregation of North Town v. Krivoruchko*, 638 F. Supp. 2d 913 (N.D. Ill. 2009), "failure to mitigate is not a defense to liability; it concerns only the amount of recoverable damages, not the right to recover damages." *Id.* at 920; *see also St. George Chicago, Inc. v. George J. Murges & Assocs., Ltd.*, 296 Ill. App. 3d 285, 292-93, 695 N.E.2d 503, 508-09 (1998). Accordingly, this is not an appropriate basis for summary judgment.

Finally, defendants argue that Tikal's argument that it signed contracts with the defendants under economic duress defeats its breach of contract claim. As the Court explained in a previous decision, Tikal may plead both the existence of a contract and economic duress in the alternative until the Court determines that the parties entered into a valid contract. *See Leonel & Noel Corp.*, 2009 WL 981384, at *4 (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003)).

**C.     Lanham Act Claim (Count Five)**

Section 43(a) of the Lanham Act provides in relevant part:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof

> . . . , which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). To prevail in an action under Section 43(a), a plaintiff must show use of a trademark by an alleged infringer that "is likely to cause confusion among consumers." *Munters Corp. v. Matsui Am., Inc.*, 909 F.2d 250, 252 (7th Cir. 1990); *see also Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000); *Forum Corp. of N. Am. v. The Forum, Ltd.*, 903 F.2d 434, 439 (7th Cir. 1990).

Mere unauthorized sale of a trademarked item does not result in a Lanham Act violation. *See, e.g.*, *Microsoft Corp. v. V3 Solutions, Inc.*, No. 01 C 4693, 2003 WL 22038593, at *9 (N.D. Ill. Aug. 28, 2003); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 590-93 (5th Cir. 1993); *H.L. Hayden Co. of N.Y., Inc. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1022-23 (2d Cir. 1989). Rather, the plaintiff must demonstrate a "defect (or potential defect) in the product itself that the customer would not be readily able to detect" that likely would result in consumer confusion. *Matrix Essentials, Inc.*, 988 F.2d at 591.

GKS contends that insufficient evidence supports Tikal's Lanham Act claims. The Court agrees. Tikal asserts that GKS violated the Lanham Act by improperly selling CCA beer in violation of Tikal's exclusive distribution rights. Tikal presents no evidence of a defect or potential defect in the beers sold by GKS nor of a likelihood of consumer confusion. Tikal's claim therefore amounts to mere unauthorized sale of a

product.

In support of its claim, Tikal sites *Syncor Int'l Corp. v. Newbaker*, 12 F. Supp. 2d 781 (W.D. Tenn. 1998), and *Keller Med. Specialties Prods. v. Armstrong Med. Indust., Inc.*, 842 F. Supp. 1086 (N.D. Ill. 1994). *Syncor* and *Keller* are materially distinguishable. The court in *Syncor* considered a distributor's alleged unauthorized sale of radiopharmaceutical materials. In denying the defendants' motion to dismiss, the court observed that "by handling and diluting the [products] in violations of [the manufacturer's] instructions, . . . [the defendant] falsely implied that the products met [the manufacturer's] strength, quality and purity requirements and were warranted by [the manufacturer]." *Syncor Int'l Corp.*, 12 F. Supp. 2d at 783-84. In this case, Tikal presents no analogous evidence. The court in *Keller* considered a defendant's alleged misrepresentation that it had exclusive rights to distribute a medical airflow product. The court denied the defendant's motion to dismiss because the plaintiff alleged that the misrepresentation would improperly dissuade customers from shopping around for a competing distributor. *See Keller Med. Specialities Prods.*, 842 F. Supp. at 1092. No such likelihood of customer confusion is shown here.

Tikal's Lanham Act claim thus fails, and the Court need not address the defendants' remaining arguments regarding this claim.

**D.     Unjust Enrichment Claim (Count Six)**

GKS contends that Tikal's unjust enrichment claim fails because Tikal has alleged the existence of an express contract. As the Court explained earlier, *see supra* at 9, Tikal may plead breach of contract and unjust enrichment in the alternative until

the Court determines that the parties entered into a valid contract.

GKS also argues that no facts support Tikal's contention that it contracted with GKS under economic duress. The Court disagrees. Tikal present sufficient evidence that GKS withheld its October 2005 order until Tikal signed a contract in late January 2006. This evidence is sufficient to raise a genuine issue of material fact regarding the enforceability of any contract between Tikal and GKS. The motion for summary judgment is denied with respect to count six.

**E.      Illinois Consumer Fraud Act Claims (Count Seven)**

The defendants assert that Tikal's ICFA claims in count seven are barred by the statute of limitations. As a preliminary matter, Tikal does not address the defendants' statute of limitations defense and has thus forfeited the claims. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (plaintiff forfeited the right to challenge defendant's assertion of statute of limitations defense by failing to oppose it).

Even without the forfeiture, the Court would rule in defendants' favor. A court may grant summary judgment based on a statute of limitations if it determines "(1) that the statute of limitations has run and (2) there exists no genuine issue of material fact regarding the time at which plaintiff's action accrued." *Kuemmerlein v. Bd. of Educ. of Madison Metro. Sch. Dist.*, 894 F.2d 257, 261 (7th Cir. 1990) (citation omitted). Both requirements are satisfied here.

Illinois law imposes a three-year statute of limitations on claims brought under the ICFA. *See* 815 ILCS 505/10a(e). A claim "accrues" under the ICFA "when a person knows or reasonably should know of his injury and also knows or reasonably

should know that it was wrongfully caused." *Tammerello v. Ameriquest Mortgage Co.*, No. 05 C 466, 2006 WL 2860936, at *7 (N.D. Ill. Sept. 29, 2006) (citing *Knox Coll. v. Celotex Corp.*, 88 Ill.2d 407, 414, 430 N.E.2d 976, 979 (1981)).

In its ICFA claim, Tikal alleges that GKS and Gregory Skaggs wrongfully refused to sell Tikal CCA's Moza and Dorada beer. The claim accrued in June 2005. Tikal presents evidence that GKS discontinued purchase of the beer by phone on June 22, 2005. In a letter dated June 24, 2005, GKS vice president Cory Stauder confirmed: "As explained in our telephone conversation, Moza and Dorada Draft beers have been officially discontinued from U.S. distribution and are no long [sic] available for ordering." Letter from Cory Stauder, Vice President of Sales at G.K. Skaggs Importers, to Leonel Mendia, President of Tikal (June 24, 2005). Mendia stated in his deposition that

> I was skeptical of the claim that these beers were no longer available. I immediately called CCA in Guatemala and confirmed that both MOZA and DORADA remained in full production, and actually talked to a plant manager who offered to add both brands back onto Tikal's pending order.

Mendia Affid. ¶ 45. Internal communications between employees of GKS, CCA, and Central Beer around the same time confirm that Mendia called CCA to check on the brands' availability.

Tikal did not file suit in this case until September 29, 2008, more than three years after the claim accrued. The Court accordingly grants the defendants' summary judgment motion with respect to count seven and declines to address the defendants' remaining arguments regarding this claim.

## F.    Tortious Interference Claims (Counts Eight and Nine)

The defendants challenge Tikal's tortious interference claims in counts eight and

nine on the grounds that the claims are time-barred, improperly pleaded, insufficiently supported by evidence, and barred by the privilege of competition.

The Court begins with the defendants' statute of limitations defense. Illinois law imposes a five-year statute of limitations on tortious interference claims. *See* 735 ILCS 5/13-205; *Poulos v. Lutheran Soc. Servs. of Illinois, Inc.*, 312 Ill. App. 3d 731, 745, 728 N.E.2d 547, 559 (2000) (tortious interference with a contractual relation); *Batchelor v. First Nat'l Bank of Blue Island*, No. 92 C 5073, 1993 WL 22859, at *5 (N.D. Ill. Jan. 20, 1993) (tortious interference with prospective economic advantage). "[A] tortious interference with contract claim accrues when the contract is breached. Similarly, a tortious interference with prospective advantage accrues when the prospective advantage is interfered with." *Hi-Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1410 (7th Cir. 1993); *see also Sparano v. Southland Corp.*, No. 04 C 2098, 1996 WL 272515, at *1 (N.D. Ill. May 17, 1996). Therefore, if GKS and CCA's tortious conduct interfered with Tikal's contracts or prospective advantage prior to September 29, 2003, the statute of limitations would bar recovery for the claims.

The defendants assert that Tikal's tortious interference claims are untimely because the accrued in late summer 2003, when GKS and Central Beer entered into the "master license agreement." Tikal counters that GKS's unlawful interference began on October 23, 2003, when GKS sent Tikal a letter informing it of GKS's master distribution agreement. Because a genuine issue of material fact remains regarding the accrual date of the plaintiff's action, the Court declines to grant summary judgment based on the defendants' statute of limitations defense. *See Kuemmerlein*, 894 F.2d at

261.

Second, GKS takes issue with Tikal's failure to plead its tortious interference with contract and business expectancy claims in separate counts in the complaint. The rule in this circuit does not require Tikal to have done so. The Seventh Circuit has repeatedly held that a plaintiff's complaint need not set forth separate counts. *See, e.g.*, *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992); *see also Landmark Document Servs., L.L.C. v. Omega Litig. Solutions, L.L.C.*, No. 05 C 7300, 2006 WL 2861098, at *4 (N.D. Ill. Sept. 29, 2006) (separate counts "are required only to the extent they are necessary to clarify the claims in the complaint"). Federal Rule of Civil Procedure 10(b) requires that claims "must be stated in a separate count or defense" only if "founded on a separate transaction or occurrence" and "[i]f doing so would promote clarity." Fed. R. Civ. Proc. 10(b). Finally, Federal Rule of Civil Procedure 8(d)(2) allows plaintiffs to plead separate claims in the alternative in a single count. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). Tikal's second amended complaint complies with these requirements. GKS's argument therefore fails.

Third, GKS contends that Tikal has not satisfied the elements of either tortious interference claim. To establish tortious interference with contractual rights, Tikal must demonstrate: "(1) the existence of a contract; (2) the defendants' awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages." *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (citation omitted). To establish tortious interference with prospective economic advantage, Tikal

15

must demonstrate: "(1) a reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of this expectation; (3) defendants' purposeful interference that prevents the plaintiff's legitimate expectation from becoming a valid business relationship; and (4) damages." *Id.* (citation omitted). Tikal has made a showing sufficient to establish genuine fact disputes on all of these elements. GKS is accordingly not entitled to summary judgment on this basis.

Finally, GKS asserts the privilege of competition as an affirmative defense and basis for summary judgment. A defendant is entitled to the protection of the privilege of competition only if "the defendant has not employed a wrongful means or is not motivated solely by malice or ill will." *Cromeens, Holloman, Sibert, Inc.*, 349 F.3d at 399 (citing *Soderland Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 619, 663 N.E.2d 1, 10 (1995)). Genuine fact issues remain regarding whether GKS employed "wrongful means." The Court therefore denies the motion for summary judgment on counts eight and nine.

**G. Motions to Strike**

Tikal moves this Court to strike a number of paragraphs in the defendants' statement of material facts on the basis that they do not comply with Local Rule 56.1. Because the Court denies summary judgment on all grounds related to the contested statements, the Court denies as moot Tikal's motion to strike.

The defendants moves this Court to strike a number of paragraphs in Tikal's statement of material facts, asserting that they improperly include argument and speculation or lack citations to the record, in violation of Rule 56.1. To the extent the

16

paragraphs violate Rule 56.1, the Court, in its discretion, chooses to excuse them. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (district courts have discretion to excuse a party's failure to comply strictly with local rules regarding summary judgment).

**Conclusion**

For the foregoing reasons, the Court grants the defendants' motions for summary judgment [docket no. 110 & 114] as to counts five and seven of the second amended complaint and denies the motion as to the remaining counts. The Court also denies the parties' motions to strike [docket nos. 142 and 154]. The case is set for a status hearing on January 20, 2010 at 9:30 a.m. for the purpose of setting a trial date, discussing the possibility of settlement, and dealing with any remaining pretrial scheduling issues.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 20, 2010