IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEONEL & NOEL CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CV 5556 |
| | ) | |
| CENTRAL BEER IMPORT & | ) | |
| EXPORT, INC. et al. | ) | |
| Defendants. | ) | |

**MOTION FOR JUDGMENT AS A MATTER OF LAW,
AND IN THE ALTERNATIVE, FOR A NEW TRIAL**

Defendant, Central Beer Import & Export, Inc. ("Central Beer"), hereby moves this Court pursuant to FRCP 50(b), for judgment as a matter of law on all counts, in favor of Central Beer and against Plaintiff. Defendant Central Beer restates the matters and arguments contained in Defendants' FRCP 50(a) motions as and for this FRCP 50(b) motion. In the alternative, Defendant, Central Beer, hereby adopts the FRCP 59 motion filed by GKS and further moves this Court pursuant to FRCP 59 for a new trial. In support of its motions, the Defendant, Central Beer, states as follows:

**INTRODUCTION**

On August 16, 2011, the jury rendered a verdict for Plaintiff and against Central Beer and GKS on Plaintiff's BIFDA claims and awarded compensatory damages for its Illinois business in the amount of $88,000 and for its non-Illinois business in the amount of $84,000. The jury further found that neither Central Beer nor GKS acted in good faith in connection with its conduct that violated BIFDA and awarded Tikal punitive damages against Central Beer in the amount of $125,000 and against GKS in the amount of $185,000. Lastly, the jury found in favor of Plaintiff and against GKS on Plaintiff's interference with contract claim and awarded

1

compensatory damages in the amount of $14,000 and punitive damages in the amount of $40,000. (A copy of the Verdict Form is attached hereto as Exhibit A.)

On August 19, 2011, judgment on the verdict was entered as follows: in favor of Plaintiff and against Central Beer on count I and against GKS on count 2 and awarding damages of $172,000 against both defendants jointly and severally, and punitive damages of $125,000 against Central Beer and $185,000 against GKS; Count 8 for Plaintiff and against GKS, compensatory damages of $14,000 and punitive damages of $40,000. (Doc 236.)

**ARGUMENT**

I. **JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b) SHOULD BE GRANTED IN FAVOR OF CENTRAL BEER.**

Judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a rational jury to find for the plaintiff. Hendrickson v. Cooper, 589 F.3d 887, 889 (7th Cir. 2009); Wallace v. McGlothan, 606 F.3d 410, 418 (7th Cir. 2010). When the evidence, viewed most favorably to the plaintiff and without evaluating the credibility of witnesses, provides no reasonable basis for a jury to find in favor of the plaintiff, judgment should be entered in favor of the defendants as a matter of law. See Walker v. Board of Regents of the University of Wisconsin System, 410 F.3d 387, 393 (7th Cir. 2005). The court must ask whether substantial evidence supports the jury's findings. Mojica v. Gannett Co., Inc., 7 F.3d 552, 561 (7th Cir. 2003). In Mojica, the court stated that to determine if there was substantial evidence, "we must ascertain 'whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict.'" Id.

## A. DEFENDANT IS ENTITLED TO JUDMGENT AS A MATTER OF LAW AS TO PLAINTIFF'S BIFDA CLAIM IN ITS ENTIRETY.

Judgment should be entered as a matter of law in favor of the Defendant on Plaintiff's BIFDA claim when (1) Plaintiff failed to prove a violation of BIFDA or bad faith conduct and (2) Plaintiff failed to prove damages under its BIFDA claims. First, Plaintiff failed to prove with substantial evidence that Defendants violated BIFDA or acted in bad faith. Under BIFDA, a brewer may cancel, fail to renew, or otherwise terminate an agreement without furnishing any prior notification for fraudulent conduct by the Plaintiff in its dealings with the Defendants. 815 ILCS 720/3(3)(G). The evidence unequivocally established Tikal's fraudulent conduct in its dealings with the Defendants. Tikal explicitly agreed to provide monthly sales and inventory reports to GKS; Tikal thereafter knowingly and intentionally falsified those reports as to its inventory and sales, which it then provided to GKS, thus engaging in fraudulent conduct. (Trial Ex. 72; Trial Transcript, Vol. II attached hereto as Ex. B, pp. 175-176 and 288-294; Trial Transcript Vol. III attached hereto as Ex. C, pp. 381-383.) Specifically, as introduced as on direct examination by Plaintiff's counsel, Mr. Mendia, Sr. admitted that he "adjusted" the inventory reports to show less inventory than Tikal actually had because the beer was going to expire and acknowledged it was wrong to do so. (Ex. C, pp. 381-383.)

Based on this evidence adduced at trial, Defendant had the right terminated Tikal without prior notification. 815 ILCS 720/3(3)(G). As such, Plaintiff failed to prove that Defendant violated BIFDA or acted in bad faith. Therefore, judgment as a matter of law should be entered in favor of Defendant as to Plaintiff's BIFDA claim.

Nonetheless, "good cause" for termination existed under BIFDA because Tikal "failed to comply with essential and reasonable requirements imposed upon the wholesaler or affected party by the agreement." 815 ILCS 720/ 1.1(9). To comply with the essential and reasonable

requirements imposed upon it, Tikal was required to "devote reasonable efforts and resources to sales and distribution of all the brewer's products, which wholesaler has been granted the right to sell and distribute and maintain satisfactory sales levels." 815 ILCS 720/2(A)(ii).

Several cases decided under the Ohio Alcoholic Beverages Franchise Act, which also requires just cause for termination of a distributor are instructive. O.R.C. 1333.84 and 85. In Excello Wine Company v. Monsieur Henri Wines, Ltd., 474 F. Supp.203 (S. D. Ohio, 1979), the court found that there was good faith and just cause for the termination of the distributor when the distributor refused to discuss its business objectives, and acted in an antagonistic and truculent manner; the court held that the statute did not require business people "to act irrationally or counter to their best interest." 474 F.Supp. at 210.

Similarly, a termination under the Ohio statute was upheld in Dayton Heidelberg Distributing Company, Inc. v. Vineyard Brands Incorporated, 2003 WL 22017542 (C.A.6 (Ohio)), where the court of appeals endorsed the standard articulated in the Excello case, supra; found a classic case of just cause to exist where the distributor's sales had declined; and also held that terminating a distributor for this economic reason constituted acting in good faith. 2003 WL 22017542 at *4. These same principles are applicable to the present case, where the same standards are applicable under BIFDA.

As in Dayton Heidelberg Distributing Company, Inc., the evidence, here, demonstrated good cause for termination. Tikal did not comply with its essential and reasonable requirements when it did not devote the reasonable efforts to its distribution activities. Specifically, Tikal never sold the CCA brands in many of the territories assigned to it. (Ex. C, pp. 404, 412 and 415-417.) In fact, Tikal stopped purchasing CCA beer in June of 2005, despite the fact that its market would have sustained the price increases to Tikal. (Trial Ex. 220 and 230; Trial

4

Transcript Vol. IV attached hereto as Ex. D, pp. 596-597 and 651-654.) Tikal further stopped selling CCA beer and advised its customers that it would no longer sell the CCA beer. (Ex. C, pp. 426-427.) The evidence clearly established that Tikal failed to devote reasonable efforts and resources to the sale and distribution of the CCA products which it had been granted the right to sell, and failed to distribute and maintain satisfactory sales levels. (Trial Ex. 13, 72, 106 and 115: Ex. C, p. 421; Ex. D, pp. 591-593.)

Tikal never cooperated with Central Beer or GKS. As in <u>Excello Wine Company</u>, Tikal refused to provide sales forecasts and reports and refused to discuss business objectives for the growth of the sale of the CCA brands. (Trial Ex. 4, 13, 28, 62, 72, 106 and 115; Ex. C, p. 418; Ex. D, pp. 575-576 and 586-589; Trial Transcript, Vol V, attached hereto as Exhibit E, pp.815-819.) Tikal never wanted to work with the GKS, failed to cooperate with GKS, was antagonistic toward GKS, violated its duty owed to GKS to act in good faith, and repeatedly attempted to get Central Beer to breach its agreement with GKS. (Trial Ex. 4, 62 and 72; Ex. B, p. 151 and Ex. D, pp. 690 and 746.) As such, Tikal terminated the agreemtn without good cause or good faith. Therefore, the subsequent alleged violations of BIFDA by Defendant are irrelevant. Accordingly, Tikal is not entitled to recover under BIFDA as a matter of law. As a result, Defendant's Rule 50(b) motion with regard should be granted.

<u>Second</u>, Plaintiff failed to prove its damages, fair market value of the distribution rights and its lost profits, with substantial evidence. The only evidence of fair market value and lost profits Plaintiff presented was through the testimony of its expert, Mr. Levine. Mr. Levine's testimony as to the fair market value and the Plaintiff's lost profits, however, was speculative at best and lacked any factual foundation. In calculating the value of Plaintiff's distribution rights and lost profits, Mr. Levine assumed, without any actual supporting data, that Plaintiff's

distribution of the CCA beer brands was profitable. (Ex. E, p. 955, 973.) Mr. Levine assumed a 4% profit margin based, not on Tikal's actual data, but on data for a company with $25 million in sales. (Ex. E, p. 957; 977-78.) Tikal's sales never reached $500,000, let alone $25 million. (Ex. E, p. 957.) Mr. Levine did not base his calculations of fair market value and lost profits on Tikal's actual sales or actual expenses, but on projected sales and estimated expenses. (Ex. E, p. 988.) Mr. Levine did not look at any balance sheets for Tikal and did not know Tikal's expenses. (Ex. E, p. 956.)

Moreover and most telling, Mr. Levine testified that Tikal had been operating at an overall loss since 1999. (Ex. E, p. 983.) As such, Mr. Levine's trial testimony makes Plaintiff's claim for fair market value and lost profits speculative at best and frivolous at worst. See Zeidler v. A & W Rests., Inc., 2001 U.S. Dist. LEXIS 22716, 9-10 (N.D. Ill. May 17, 2001) (finding that plaintiffs had posted "significant losses every year that [their restaurant was in operation," "making their claim of lost profits speculative at best and frivolous at worst."); see also SK Hand Tool Corp. v. Dresser Industries, Inc., 284 Ill. App. 3d 417, 425, 672 N.E.2d 341, 347 (1st Dist. 1996); Kenosha Liquor Company v. Heublein, Inc., 895 F.2d 418, 420 (7th Cir. 1990). Accordingly, the evidence of Plaintiff's damages, consisting solely of Mr. Levine's speculative testimony, certainly was not sufficient to support the verdict, even when viewed in the light most favorable to the Plaintiff. Therefore, judgment as a matter of law should be entered in favor of the Defendants on Counts I and II.

**B. ALTERNATIVELY, DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFF'S BIFDA CLAIMS FOR THE NON-ILLINOIS TERRITORY.**

BIFDA does not apply to Plaintiff's agreement for the distribution of the CCA brands of beer in the non-Illinois states. BIFDA only applies to relations between a brewer and a

*wholesaler*. 815 ILCS 720/2(B) ("This Act shall be incorporated into and shall be deemed a part of every agreement between brewers and wholesalers…."). Under BIFDA, "an agreement means any contract … between a brewer and a *wholesaler* pursuant to which a *wholesaler* has been granted the right to purchase, resell, and distribute as *wholesaler*…." 815 ILCS 720/1.1(2). A *wholesaler* as defined by BIFDA "means any person, other than manufacturer …, who is engaged in this State in purchasing, storing, possessing or warehousing any alcoholic liquors **for resale** or **reselling at wholesale**, whether within or without this State." 815 ILCS 720/1.1(3).

The evidence at trial clearly established that Tikal was not operating as wholesaler in the states outside Illinois. (Ex. B, pp. 266-267.) Tikal was only licensed to sell to distributors, not wholesalers or retailers, in the non-Illinois states. Hence, Tikal was not purchasing CCA beer for resale (to retailers) or reselling at wholesale. 815 ILCS 720/1.1.3; See also, 815 ILCS 720/2(B); 235 ILCS 5/1-3.15; 815 ILCS 720.1.1(2-5); Minn. Stat. Ann. §325B.01(3), (4) (2010) (Tikal would be brewer, not wholesaler); S.D. Codified Laws §35-8A-2(11), (14) (2011) (Tikal would be supplier, not wholesaler); N.D. Cent Code §5-04-01(3), (6) (2011) (Tikal would be brewer, not wholesaler); R.R.S. Neb. §53-213, 215 (2011) (Tikal would be supplier, not wholesaler); Ohio Rev. Code §1333.82(B), (C) (2011) (Tikal would be manufacturer, not distributor).

Thus, Plaintiff's claims relating to the agreement for the non-Illinois states do not fall within the statutory purview of BIFDA. As such, Defendant is entitled to judgment as a matter of law as to Plaintiff's BIFDA claims which relate to its distribution in the non-Illinois territory.

### C. DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO TIKAL'S NON-ILLINOIS DAMAGES.

The fair market value of Plaintiff's distribution rights and lost profits in the non-Illinois states are not recoverable as a matter of law as such extraterritorial application of BIFDA would violate the Commerce Clause. Morley-Murphy Co. v. Zenith Elec. Corp., 142 F.3d 373, 379 (7th

Cir. 1998) (refusing to allow a franchisee suing under a Wisconsin statute to recover damages for lost profits due to the loss of sales in other states following dealership termination); <u>Stawski Distrib. Co. v. Zyweic Breweries PLC</u>, No. 02 C 8708, 2003 WL 22290412, at *3 (N.D.Ill. Oct. 6, 2003) (concluding that BIFDA "should not be construed as governing the parties' relationship outside of Illinois"); <u>H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.</u>, No. 99 C 5437, 2002 WL 31018302, *3-4 (N.D. Ill. Sept. 9, 2002) (explaining that even though franchisee did not "maintain physical dealerships outside of Illinois, allowing recovery under [Illinois Franchise Disclosure Act] for activities [occurring outside of Illinois] would pose a constitutional issue").

Further, by its terms, BIFDA applies to a wholesaler of beer who is "engaged in this State" in its resale or reselling at wholesale, whether or not such wholesaler is located "within or without this State." The statute must be construed so as not to violate the Commerce Clause. <u>Morley-Murphy Co. v . Zenith Elec. Corp.</u>, 142 F.3d 373, 379 (7th Cir. 1998). Construing BIFDA to apply to a wholesaler serendipitously located within the State of Illinois who is not engaged under the agreement at issue in offering beer for resale or reselling at wholesale in the State of Illinois would be such a violation. 815 ILCS 720/1.1(3) ("beer wholesaler" means any person … who is <u>engaged in this state</u> in purchasing, storing, possessing or warehousing any alcoholic liquors <u>for resale or reselling at wholesale</u>, whether within or without this State") (emphasis added). This is especially true when the evidence demonstrated that Plaintiff was not paying Illinois sales tax but out-of-state sales tax on its sales of beer in the non-Illinois states. (Ex. B, pp. 264-65.) As such, the award of damages to Plaintiff for its non-Illinois business is in violation of the Commerce Clause. Accordingly, judgment should be granted as a matter of law in favor of the Defendant as to Plaintiff's damages concerning its non-Illinois business.

### D. DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO THE AWARD OF PUNITIVE DAMAGES UNDER PLAINTIFF'S BIFDA CLAIMS.

The Beer Industry Fair Dealing Act ("BIFDA") contemplates a **penalty**, not punitive damages, when there is a finding that the Defendants' failed to offer reasonable compensation in good faith. First, the plain language of BIFDA specifically states "penalty." 815 ILCS 720/9(7). The primary rule of statutory construction is to give effect to legislative intent by first looking at the plain meaning of the language. Where the language of a statute is clear and unambiguous, a court must give it effect as written, without reading into it exceptions, limitations or conditions that the legislature did not express. Davis v. Toshiba Mach. Co., 186 Ill. 2d 181, 184-185 (Ill. 1999). Courts will first look to the words of the statute, for the language used by the legislature is the best indication of legislative intent. Id. at 185.

Here, the Illinois General Assembly used the word "penalty." Section 9 is devoid of any express provision for punitive damages, but provides for a **penalty** upon a finding that the party has not acted in good faith. In fact, the language of section 9 necessarily takes the "penalty" provision out of the ambit of punitive damages. Punitive damages cannot be awarded if the defendant's misconduct is not above and beyond conduct needed for basis of underlying cause of action. Rather, punitive damages can be awarded only for conduct involving some element of outrage similar to that usually found in crime. Parsons v. Winter, 142 Ill. App. 3d 354, 491 N.E.2d 1236, 1241 (1st Dist. 1986); Loitz v. Remington Arms Company, Inc., 138 Ill. 2d 404, 416, 563 N.E.2d 397, 150 Ill. Dec. 510 (Ill. S.Ct. 1990). The misconduct for assessing a penalty dictated by section 9 is not above and beyond the basis for the underlying cause of action but *is* the basis for the underlying cause of action – a finding that the Defendants failed to act in good faith in violation of BIFDA. As such, the term "penalty" as used and applied in section 9 cannot

mean punitive damages. Furthermore, a violation of a term of BIFDA is necessarily a breach of contract, in which punitive damages are not available. Bank of Illinois v. Bill's King City Stationery, Inc., 198 Ill. App. 3d 434 (5th Dist. 1990). As such, the "penalty" provision of section 9 cannot be equated with "punitive damages."

Nonetheless, under Illinois law, the Court must determine as a matter of law whether the facts and circumstances of the particular case justify the imposition of punitive damages. Kelsay, 74 Ill. 2d at 186; *see also* Stojkovich v. Monadnock Building, 281 Ill. App. 3d 733, 742, 666 N.E.2d 704, 217 Ill. Dec. 35 (1st Dist. 1996) (holding that punitive damages were not warranted when it found no evidence that the Defendant's conduct satisfied the degree of intentional wrongdoing). Punitive damages are only warranted if the defendant's conduct rises to the level of fraud or actual malice or that the facts show oppression or violence, or that the Defendants acted with such gross negligence as to indicate a wanton disregard of Plaintiff's rights. Loitz v. Remington Arms Company, Inc., 138 Ill. 2d 404, 416, 563 N.E.2d 397, 150 Ill. Dec. 510 (Ill. S.Ct. 1990). There was no legally sufficient evidence to demonstrate that punitive damages were warranted under Plaintiff's BIFDA claim. As such, the judgment should be entered as a matter of law in favor of the Defendant as to Plaintiff's punitive damages award.

## II. ALTERNATIVELY, A NEW TRIAL PURSUANT TO RULE 59 SHOULD BE GRANTED.

A new trial should be ordered on the grounds that the jury instructions were erroneous and the verdict was against the manifest weight of the evidence. In Illinois, the test for determining the adequacy of jury instructions is whether the instructions given are sufficiently clear so as not to mislead the jury and whether they fairly and correctly state the relevant principles of law. Eaves v. Hyster Co., 244 Ill. App. 3d 260, 262, 185 Ill. Dec. 80, 614 N.E.2d 214 (1st Dist. 1993). Courts must determine whether the instructions misstate or insufficiently

state the law and then whether the error likely misled or confused the jury, thereby prejudicing one of the parties. E.E.O.C. v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1283 (7th Cir. 1995); Gile v. United Airlines, Inc., 213 F.3d 365, 374-75 (7th Cir. 2000); see also Schobert v. Ill. Dep't of Transp., 304 F.3d 725, 730 (7th Cir. 2002).

A District Court's power to grant a motion for a new trial under Rule 59 "is much broader" than its power to grant a judgment as a matter of law under Rule 50, including the ordering of a new trial on the basis that the verdict is against the weight of the evidence. Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009). The prevailing general rule in the circuits, and the rule endorsed by the commentators, is that the trial judge is not required to review the evidence in the light most favorable to the verdict, but may review the evidence independently and also assess the credibility of the witnesses. Jennings v. Jones, supra, 587 F.3d at 439; Wright & Miller, Federal Practice and Procedure, Sec. 2806, at 67 (2d ed. 1995); Thomas v. Stalter, 20 F.3d 298, 304 (7th Cir. 1994). A new trial should be granted if the verdict is excessive and against the manifest weight of the evidence presented. King v. Harrington, 447 F.3d 531, Eiland v. Westinghouse Electric Corp., 58 F.3d 176, 183 (5th Cir. 1995); Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 13 (1st Cir. 2004). A new trial should also be granted if a prejudicial error occurred. Bankcard America, Inc. v. Universal Bancard Systems, Inc., 203 F.3d 477, 480-81 (7th Cir. 2000).

   **A. DENIAL OF THE MOTION FOR LEAVE TO FILE AFFIRMATIVE DEFENSE AND AFTER-ACQUIRED EVIDENCE INSTRUCTION WAS PREJUDICAL ERROR.**

The trial testimony of Tikal's principal, Leon Mendia, revealed for the first time that he had intentionally submitted fraudulent monthly sales and inventory reports to GKS to conceal from the Defendants that Tikal was selling product well past its expiration date. Such fraudulent

conduct justifies a termination of a distributor without prior notification under BIFDA. 815 ILCS 720/3(3)(G), The after-acquired evidence instruction (Doc 231-1) would have been critical to the jury's deliberations and its adjudication of Tikal's BIFDA claims, as well as rendering anything that occurred after such conduct as irrelevant to Tikal's BIFDA claims, including, but not limited to whether Defendants acted in good faith and had good cause to terminate Tikal in January of 2007.

This issue was impliedly tried, if not expressly tried, on the facts. The test for allowing an amendment under *Rule 15(b)* to conform pleadings to issues impliedly tried is whether the opposing party "would be prejudiced by the implied amendment, i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory." Lomartira et al. v. American Automobile Ins. Co., et al., 371 F.2d 550, 552 (2nd Cir. 1967) (holding that allowing defendant's amended pleadings to include an affirmative defense of fraud was not error when the issue was impliedly tried).

Here, Mr. Mendia Jr. testified on cross-examination that he did not know the reason for the discrepancy between Tikal's internal inventory and sales reports and what was being reported to GKS. (Ex. B, pp. 289-294.) Similarly to the facts in Lomartira, after Mr. Mendia, Jr.'s testimony about the discrepancy in the Plaintiff's records, Plaintiff was certainly apprised that the honesty, as well as the veracity, of the Plaintiff's inventory and sales reports and witness' testimony regarding same was at issue. In response, on *direct examination by Plaintiff's own counsel*, Mr. Mendia, Sr. admitted as to the fraudulent conduct and admitted during questioning by Plaintiff's counsel that he falsified the inventory and sales reports to the Defendants. (Ex. C, pp. 381-383.) Plaintiff cannot genuinely claim that it did not have an opportunity to offer

additional evidence in defense of the fraudulent conduct when its principal admitted to the fraudulent conduct on direct examination by Plaintiff's counsel.

Moreover, after-acquired evidence is applicable and admissible in the context of the termination of franchisees and distributors. See, David Glen, Inc. v. SAAB Cars USA, Inc., 837 F.Supp. 888 (N.D. Ill. 1993); C.C.S Chicago Recreation, Inc. v. American Suzuki Motor Corp., 1996 U.S.Dist. LEXIS 2459, 19-20 (N,D. Ill. March 1, 1996); Tuf Racing Prod., Inc. v. American Suzuki Motor Corp., 1998 U.S. Dist. LEXIS 8331, 14-15 (N.D. Ill. June 3, 1998). As such, the denial of the motion to file this additional affirmative defense and the after-acquired evidence instruction was prejudicial error, which clearly supports the granting of a new trial.

### B. PREJUDICAL ERROR OCCURRED WITH THE VERDICT FORM AND THE JUDGMENT.

The Verdict Form given was in error as it failed to separate the Defendants with regard to the Illinois business and non-Illinois business. Defendants specifically and timely requested the separation of the Illinois and non-Illinois business as to each Defendant so that it would have been clear as to which damages, if any, each or both Defendants were found to be liable. (Doc 231, ¶ 2; Trial Transcript, Vol. VI, p. 1058-59 attached hereto as Exhibit F.) Based on the Verdict Form given, it cannot be determined whether the Jury found each Defendant liable for the Illinois business and/or the non-Illinois business. (Ex. A.) The evidence established that the Plaintiff entered into two separate agreements: one agreement with GKS for territory within Illinois and another agreement with Central Beer for territory in States other than Illinois. The failure of the Verdict Form to break-down the Defendants' liability under BIFDA as to the two separate agreements was error and caused confusion. As such, the Verdict Form prejudiced the Defendants. Accordingly, a new trial should be ordered.

Furthermore, the Judgment is not consistent with the Verdict.  <u>First</u>, the Judgment entered an award of the total amount of damages for Illinois and non-Illinois against both Defendants. As discussed, the Jury was not instructed whether to find, and it cannot be determined, that the Jury found both Defendants violated both the agreement for Illinois business and the agreement for non-Illinois business. A new trial should be granted on this basis.

<u>Second</u>, the Jury was never instructed to determine whether to apportion the damages jointly and severally and whether doing so would be proper.  BIFDA does not provide for joint and several liability. <u>See</u> 815 ILCS 720/1 *et seq*.   Moreover, neither of the agreements contains a joint and several clause.  Lastly, the Jury was not instructed to determine whether either of the Defendants participated in or caused the other's breach.  <u>Nolen v. Dining Car Employees, Local No. 43</u>, 1993 U.S. App. LEXIS 23941 (7th Cir. Ill. Sept. 14, 1993), *citing*, Bennett, 958 F.2d at 1440.   Thus, the Judgment awarding compensatory damages jointly and severally against Central Beer and GKS and to both Illinois and non-Illinois business was prejudicial error. Therefore, a new trial should be granted.

### C. DENIAL OF AN INSTRUCTION AS TO WHOLESALERS WAS PREJUDICIAL ERROR.

The BIFDA instruction failed to instruct the jury that Plaintiff was required to prove an agreement between the Defendants and a <u>wholesaler</u> as requested by Defendants (Doc 231-2). Rather, the instruction given only provided that Plaintiff establish an agreement for the right to distribute beer offered by the defendant.  The instruction given was an inaccurate and misleading statement of the law.  An agreement defined by BIFDA "means any contract … between a brewer and a *wholesaler* pursuant to which a *wholesaler* has been granted the right to … distribute as *wholesaler*…." 815 ILCS 720/1.1(2). Pursuant to the plain language of BIFDA, the jury should have been instructed to determine whether Tikal was a wholesaler with respect to the

agreement for the non-Illinois territory. The failure to include such an instruction was prejudicial error warranting a new trial.

### D. PREJUDICIAL ERROR OCCURRED WHEN THE JURY WAS INSTRUCTED ON AWARDING PUNITIVE DAMAGES.

The jury instruction on punitive damages should not have been given. Defendant refers to its Motion *in limne* and supporting brief. (Doc 182, 196.)

### E. PREJUDICIAL ERROR OCCURRED WHEN THE JURY WAS NOT INSTRUCTED AS TO ABANDONMENT.

Defendants' Proposed Instruction No. 35, entitled "Abandonment," accurately stated the law that if the jury found by a preponderance of the evidence that Tikal had abandoned its contracts with Tikal and Central Beer, then Tikal could not recover any damages based upon Tikal's claims that the contracts were breached by Tikal and/or Central Beer. See, Zeidler v. A&W Restaurants, Inc., 2006 WL 1898056 (N.D. Ill.). The evidence at trial was undisputed that Tikal failed to make any purchases of CCA beer from GKS after June of 2005, and that it stopped selling beer entirely after July of 2006 and so notified its customers. The failure to give this jury instruction constituted prejudicial error.

### CONCLUSION

For all of the reasons set forth above, as well as those stated in the post-trial motions of Defendants, Central Beer and GKS, the contents of which are hereby incorporated herein by reference, judgment as a matter of law under Rule 50(b) should be granted in favor of Defendants and against Plaintiff. Alternatively, a new trial should be granted under Rule 59.

Respectfully submitted,
Paige C. Donaldson (ARDC # 6220304)
Heather D. Erickson (ARDC # 6269711)
SANCHEZ DANIELS & HOFFMAN
333 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
(312) 641-1555

**CENTRAL BEER IMPORT & EXPORT, INC.**

By:  /s/ Heather D. Erickson
    One of Its Attorneys

### CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that service of the above and foregoing pleading was accomplished through the Electronic Notice for Registrants on the attached CM/ECF service list on this 9th day of September, 2011. Copies of documents required to be served by Fed. R. Civ. P. 5(a) have been served.

**CM/ECF Service List**
The following is the list of attorneys who are currently on the list to receive e-mail notices for this case:
David Benjamin Goodman - dgoodman@shawgussis.com,
Marc Nelson Blumenthal - marcnblawyer@sbcglobal.net
George J. Spathis - gspathis@shawgussis.com
Dennis C. Waldon - dwaldon@lwblaw.com
Manuel Sanchez - msanchez@sanchezdh.com
Michael A. Moses - mam@smslaw.com
Paige C. Donaldson - pdonaldson@sanchezdh.com

*/s/ Heather D. Erickson*