**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LEONEL & NOEL CORP.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08 C 5556** |
| | ) | |
| **CENTRAL BEER IMPORT & EXPORT,** | ) | |
| **INC. and G.K. SKAGGS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Leonel & Noel Corp. (Tikal) sued Central Beer Import & Export Inc. (Central Beer) & G.K. Skaggs, Inc. (GKS). The case was tried to a jury on Tikal's claims against both Central Beer and GKS under the Beer Industry Fair Dealing Act (BIFDA) and against GKS for tortious interference with contract. The jury found in favor of Tikal against both defendants on the BIFDA claim and awarded Tikal compensatory damages totaling $172,000, as well as punitive damages of $125,000 against Central Beer and $185,000 against GKS. The jury also found in favor of Tikal against GKS on the tortious interference claim and awarded plaintiff compensatory damages of $14,000 and punitive damages of $40,000 on that claim.

Both defendants have moved for judgment as a matter of law on the claims that were tried to the jury, or in the alternative for a new trial. These motions largely concern

arguments the Court dealt with before or during the trial. The Court incorporates those rulings here to the extent it does not expressly restate them.

In addition, Tikal has moved for an award of attorney's fees under BIFDA. GKS has moved for an award of attorney's fees with regard to two claims on which the Court previously granted summary judgment against Tikal, specifically, claims under the Lanham Act and the Illinois Consumer Fraud Act (ICFA). Finally, Tikal has filed a petition for fees pursuant to an earlier discovery sanctions order.

      1.    <u>Motions for judgment as a matter of law</u>

The Court notes that defendants have made certain arguments in their post-trial JMOL motions that were not contained in their JMOL motions filed during the trial before the deadline given by the Court. Because those points were not properly raised in a timely pre-verdict motion, they are not properly considered in a post-trial motion. *See Wallace v. McGlothan*, 606 F.3d 410, 418 (7th Cir. 2010). The Court finds them forfeited but nonetheless discusses their merits (with limited exceptions as noted below) to ensure a complete record on appeal.

On a motion for judgment as a matter of law under Rule 50(a), the Court views the evidence in the light most favorable to the party that prevailed at trial and draws reasonable inferences in that party's favor. *See, e.g., Marcus & Millichap Inv. Servs. of Chicago v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011).

      a.    Central Beer argues that during his testimony at trial, Tikal's owner, Leonel Mendia Sr., admitted that he had falsified certain reports that were sent to GKS to reflect a lower level of inventory than Tikal actually had, because the beer was about to reach expiration. It is undisputed that neither defendant was aware of this prior to

2

trial and that neither relied on this sort of conduct in connection with Tikal's termination as a beer distributor. Central Beer contends, however, that this "after-acquired evidence" gave it the right under BIFDA to terminate Tikal without notice. *See* 815 ILCS 720/3(3)(G) (permitting termination without prior notice based on "[f]raudulent conduct by the wholesaler in its dealings with the brewer."). As a result, Central Beer argues, it is entitled to judgment on Tikal's BIFDA claim.

The argument lacks merit. Neither Central Beer nor GKS offered any evidence at trial to the effect that Central Beer actually would have terminated Tikal had defendants known the truth or the fact that Tikal submitted false reports.[1] Without such evidence, the after-acquired evidence defense is entirely speculative and thus provides no basis for entry of judgment as a matter of law.

In any event, as defendants suggested at trial (in arguing that Tikal's BIFDA and contract breach claims were duplicative), a BIFDA claim amounts to a breach of contract claim with a statutory overlay. Under Illinois' mend-the-hold doctrine, the defendant in a breach of contract suit may not change its defense in the course of litigation by citing a different ground for termination than the one on which it had relied. *See, e.g., Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008); *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 364 (7th Cir. 1990). Thus as a matter of general contract law in Illinois, there is no after-acquired evidence defense. *See von Pein v. Hedstrom Corp.*, No. 2004 WL 1102317, at *2-4 (N.D. Ill. May 4, 2004) (rejecting after-acquired evidence doctrine as a matter of Illinois common law). And

---

[1] Several GKS and Central Beer-affiliated witnesses testified at trial after Mr. Mendia Sr. gave the testimony in question.

none of the cases Central Beer cites is a BIFDA case.  There is no support for the contention that this would have been an available defense even if defendants had offered evidence that the misconduct they cite actually would have led to Tikal's termination.

b.     Central Beer's next argument is that the evidence established that there was good cause to terminate Tikal because it did not comply with Central Beer / GKS's reasonable requirements and did not devote reasonable efforts and resources to fulfilling its obligations.  Taking the evidence in the light most favorable to Tikal, a reasonable jury could find that Tikal met its requirements.  In addition, as Tikal points out, even if defendants believed (as they did) that Tikal was not performing adequately, BIFDA still required advance notice, an opportunity to cure, and good faith efforts to resolve the dispute.  A reasonable jury could find defendants did not do what the statute requires before Tikal was terminated.

c.     The jury was instructed that damages on the BIFDA claim consisted of the fair market value of Tikal's rights regarding the particular brand of beer at issue.  The valuation of Tikal's distribution rights provided by its expert, Lawrence Levine, was sufficiently grounded in the evidence.  The fact that Tikal's business, overall, was not profitable does not mean, as Central Beer suggests, that the particular distribution rights at issue had no value or that Levine's opinion regarding those rights' value was unsupported or unsupportable.  As to GKS's parallel argument, the relatively modest compensatory damage award on the tortious interference claim likewise had a sufficient basis in the evidence.

d.     The Court agrees with Tikal that BIFDA, as worded, authorized it to

4

pursue a claim on which its damages arose in part from sales activity that Tikal conducted outside Illinois. BIFDA defines a wholesaler as an entity that "is engaged in this State in purchasing, storing, possessing or warehousing any alcoholic liquors for resale or reselling at wholesale, whether within or without this State." Tikal was engaged in purchasing "in this State" beer for resale at wholesale both "within and without this State." The fact that in some instances it sold to distributors does not make those sales any less "wholesale" sales.

e.      The Court disagrees with Central Beer's argument that application of BIFDA to Tikal's out-of-state sales violates the Commerce Clause of the U.S. Constitution. The Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the States." *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336 (1989) (internal quotation marks and citation omitted). In this case, BIFDA was not applied to commerce that took place "wholly outside of [Illinois'] borders." Rather, it was applied to commerce that took place in Illinois – Tikal purchased and got delivery of its beer here – involving an Illinois company whose only place of business was in this state. Tikal was injured in this state. The fact that some part of its damages stemmed from sales that it made outside Illinois does not render the application of BIFDA constitutionally infirm.

f.      The Court rejects Central Beer's attack on the award of punitive damages under BIFDA. Central Beer argues that the statute permits a "penalty," which it says somehow differs from "punitive damages" (though it does not really explain how). Central Beer does not contend, however, that the standard for award of such a "penalty"

5

differs from the standard the Court set forth in the jury instructions, a standard to which Central Beer has interposed no objection. In addition, the Court agrees with Tikal that the evidence was sufficient to permit a jury to find that Central Beer failed to act in good faith (the BIFDA standard) and acted with malice or wanton disregard of Tikal's rights (the standard under the tortious interference claim).

       g.      GKS argues that the tortious interference claim is time-barred, contending that Tikal's complaint bases this claim on a contract between GKS and Central Beer executed in August 2003. That is a misreading of both the complaint and the evidence. The complaint says the Tikal's relationship with Central Beer "began to deteriorate" at that point, but a tortious interference claim requires a termination of the plaintiff's contract, which indisputably did not occur until well within the statute of limitations. Contrary to GKS's argument, Tikal's claim did not accrue in August 2003.

       h.      The Court agrees with Tikal that the evidence sufficiently supported a finding that GKS urged Central Beer to cut off its relationship with Tikal, which is sufficient to satisfy the inducement requirement for tortious interference. The Court also rejects GKS's other arguments to the effect that no reasonable jury could have found in Tikal's favor on this claim.

       i.      The evidence also sufficiently supported a punitive damages award on the tortious interference claim, for the reasons discussed by Tikal in its response to GKS's motion.

2.    <u>Motions for new trial</u>

       Several of defendants' asserted grounds for a new trial concern jury instruction issues. In this regard, the Court considers whether the instructions as a whole were

sufficient to inform the jury of the applicable law and grants a new trial only if an instruction, or the failure to give an instruction, prejudiced the moving party. *Marcus & Millichap Inv. Servs. of Chicago*, 639 F.3d at 308; *Lewis v. City of Chicago Police Dept.*, 590 F.3d 427, 433 (7th Cir. 2009).

a. The Court believes it correctly declined to give defendants' proposed jury instruction that GKS could not legally sell beer to Tikal until a written agreement was in place, because that is not what the cited provision of BIFDA says.

b. The Court also rejects Central Beer's contention that it suffered prejudicial error from the failure to instruct the jury regarding whether Tikal was a wholesaler within the meaning of BIFDA, for the reasons described in Tikal's response to Central Beer's post-trial motion.

c. For the reasons discussed earlier, defendants were not prejudiced by the Court's refusal to give an after-acquired evidence instruction.

d. Central Beer likewise was not prejudiced by the failure to give the jury the BIFDA statutory definition of "abandonment." This did not preclude Central Beer from arguing this to the jury, and the instructions regarding the BIFDA claim adequately described what Tikal had to prove. The proposed instruction was not a necessary addition.

e. The Court reaffirms its decision to give an instruction that permitted, but did not require, the jury to draw an adverse inference from Gregory Skaggs' false statement in response to discovery requests that he had produced records that permitted Tikal to identify the prices GKS charged to other distributors. Defendants had contended that they charged Tikal the same price they charged to others, and Tikal

disputed this. Tikal served a discovery request asking GKS to identify the prices it charged to other distributors.

In response to this request, GKS objected generally but said that "relevant business records are being produced." Mr. Skaggs then stated under oath that this response was true. GKS produced a handful of invoices. It later came out that there were perhaps hundreds of invoices to other distributors, all of which were responsive to Tikal's discovery request, that GKS had not produced. When the Court ordered their production just before trial, some of them showed that GKS had charged lower prices to other distributors than it had charged to Tikal. On a motion *in limine*, the Court declined to bar GKS from claiming it had charged Tikal the same price that it charged others but said that it would give an instruction describing Mr. Skaggs' false statement and permitting the jury to draw an adverse inference.

GKS complains that Tikal should have raised the deficiency in its document production earlier during the discovery process. The obligation, however, was on GKS as the responder to provide truthful responses, not on Tikal as the requester to assume it was not being told the truth.

The Court also rejects GKS's reargument of the merits of the discovery issue. Read in context, GKS's responses to the pertinent requests misleadingly indicated that it had produced the records from which Tikal could determine GKS's pricing to others, even though this indisputably was not the case. The fact that GKS made a general, boilerplate objection to the interrogatory does not excuse the false affirmative representation it made that it was, despite the objection, producing the pertinent records. (In addition to its responses to the discovery requests, the cover sheet for the

8

documents produced described them as "sales invoices to other GKS distributors," which again indicated that it was producing whatever records it had.)

f.      The Court did not err in declining Central Beer's request to instruct the jury to award damages on a by-defendant basis on the BIFDA claim. Central Beer offered no authority at or before the jury instruction conference to support this, despite being given the opportunity to do so after the Court specifically advised that it saw no authority to support the request. In any event, the evidence tended to show that the two defendants acted in concert, and thus there was no actual prejudice to Central Beer from the absence of this instruction.

g.      As discussed earlier, the evidence was sufficient to support giving a punitive damages instruction.

h.      The Court rejects defendants' arguments that the jury's verdict was against the manifest weight of the evidence. A court may grant a motion for new trial the court, "in its own assessment of the evidence presented[,] believes that the verdict went against the manifest weight." *Mejia v. Cook County*, 650 F.3d 631, 634 (7th Cir. 2011). The Court disagrees with defendants' contention that Mr. Levine's testimony was so unsupportable, Mr. Mendia was so lacking in credibility, and the evidence was so supportive of the argument that Tikal did not hold up its end of the relationship, that the manifest weight of the evidence was against the verdict. There was ample evidence to support the jury's decision, even if a reasonable person could have come out the other way.

i.      In its reply brief, GKS argues that the tortious interference claim was duplicative of the BIFDA claim. That argument is forfeited because GKS never asserted

9

it during the trial or even in its post-trial motion but instead waited until filing its reply brief on that motion.

   j.  The fact that the judgment that the Court entered aggregated the damages awarded by the jury does not make it inconsistent with the jury's verdict, nor does it prejudice Central Beer in any way.

3.  <u>Plaintiff's motion for BIFDA attorney's fees and expenses</u>

   Defendants were given an opportunity to respond to Tikal's motion for attorney's fees under BIFDA.[2] Despite this, they interposed no objection to the motion within the time set by the Court, and they sought no extension of time. And when Tikal, at the time for filing its reply brief, pointed out that defendants had not responded to the motion, defendants did not request additional time or the opportunity to file a response. Defendants are therefore deemed to have conceded the fee petition in its entirety. Pursuant to BIFDA, 815 ILCS 720/9(5), the Court awards plaintiff attorney's fees of $715,189.00 and expenses of $73,901.11, for a total of $789,090.11.

4.  <u>Plaintiff's motion for discovery sanctions attorney's fees and expenses</u>

   In connection with GKS's discovery noncompliance as described above, the Court awarded Tikal its reasonable attorney's fees. Tikal filed a fee petition requesting $11,585.03 in attorney's fees and expenses.[3] GKS objected on various grounds, arguing that the total should be $6,714.53. Tikal had the opportunity to reply to these objections but did not do so. It has thus in effect conceded the points made in GKS's

---

   [2] The schedule the Court set was based upon an agreed-upon schedule set forth in a joint status report filed by all parties. *See* dkt. nos. 241 & 244.

   [3] Tikal excluded these fees from its BIFDA fee petition. *See* dkt. no. 251 at 8.

response.  The Court awards Tikal attorney's fees and expenses of $6,714.53.

5.    GKS's motion for attorney's fees and expenses

GKS seeks attorney's fees based on Tikal's claims under the Lanham Act and ICFA, on which the Court entered summary judgment in GKS's favor.

The Lanham Act authorizes a fee award to the prevailing party in "exceptional cases."  15 U.S.C. § 1117(a).  The Seventh Circuit has said that when a prevailing defendant seeks a fee award under this provision, a court may award fees if the suit was "oppressive," that is, "something that might be described not just as a losing suit but a suit that had elements of an abuse of process, whether or not it had all the elements of the tort."  *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 126 F.3d 1028, 1031-32 (7th Cir. 1997).  More recently, the court has stated that a case is exceptional if the claim or defense "was objectively unreasonable – was a claim or defense that a rational litigant would pursue only because it would impose disproportionate costs on his opponent – in other words only because it was extortionate in character if not necessarily in provable intention."  *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 965 (7th Cir. 2010).

Tikal's filing and pursuit of its Lanham Act claim, though ultimately unsuccessful, does not meet this standard.  It argued in its response to GKS's attorney's fee motion that the allegations on which the claim was based were a subset of the selfsame allegations underlying its other claims, on which it was successful.  *See* dkt. no. 255 at 9.  GKS was given the opportunity to attempt to refute this contention via a reply brief, but it did not file one.  That aside, the Court agrees with Tikal's contention based on its own understanding of the evidence via the summary judgment submissions and the

11

trial. Though the Lanham Act claim was a losing effort for Tikal, it bore none of the indicia of abuse of process, oppressiveness, or attempted extortionate behavior.

ICFA authorizes a fees award to a prevailing defendant only if the suit is brought or pursued in bad faith. *Krautsack v. Anderson*, 223 Ill. 2d 541, 559-60, 861 N.E.2d 633, 647 (2006). Though the Court concluded that Tikal's ICFA claim was time-barred, a loss, even a loss on statute of limitations grounds, does not equate to bad faith. GKS has failed to show that Tikal filed or pursued the claim in bad faith.

GKS also seeks a fee award on these claims against Tikal's attorneys under 28 U.S.C. § 1927, which permits an award of fees based on vexatious multiplication of the proceedings. The Court denies that request for the same reasons cited above. Finally, the Court denies GKS's request for a fee award under Federal Rule of Civil Procedure 11, because (as Tikal points out in response) GKS failed to comply with that Rule's safe-harbor provisions.

### Conclusion

For the reasons stated above, the Court denies defendants' motions for judgment as a matter of law or for a new trial [dkt. nos. 242 & 243]; denies defendant G.K. Skaggs, Inc.'s motion for attorney's fees [dkt. no. 248]; and grants plaintiff's motion for attorney's fees [dkt. no. 251]. The Court awards plaintiff attorney's fees and expenses under the Beer Industry Fair Dealing Act in the amount of $789,090.11, against both defendants jointly and severally, and awards plaintiff attorney's fees and expenses on the previously-ordered discovery sanction in the amount of $6,714.53

against defendant G.K. Skaggs, Inc.

MATTHEW F. KENNELLY
United States District Judge

Date:  January 30, 2012